UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**JOHN E. SHELTON, et al.,**

                Case No. 3:12-cv-00390

    Plaintiffs,

-v-

                Judge Thomas M. Rose

**TWIN TOWNSHIP, OHIO, et al.,**

    Defendants.

---

**ENTRY AND ORDER GRANTING DEFENDANT TWIN TOWNSHIP'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. #3) AND DISMISSING THE REMAINING STATE-LAW CLAIMS**

---

Plaintiffs John E. Shelton, Betty J. Shelton, and John E. Shelton Jr. ("Sheltons") filed a complaint against Defendants Twin Township, Ohio ("Township"); Donnie Jones, personally ("Jones"); and Rodney Creech, personally ("Creech") in this Court on November 20, 2012. Doc. #1. The Sheltons brought six (6) Claims for Relief. Doc. #1. The First Claim for Relief is for wrongful demolition against Township. The Second Claim for Relief is for violation of the Sheltons' procedural and substantive Due Process against Township. The Third Claim for Relief is for conversion against Township. The Fourth Claim for Relief is for trespass against Jones. The Fifth Claim for Relief is for trespass against Creech. The Sixth Claim for Relief is for battery against Jones. Pursuant to 28 U.S.C. § 1331, the Court exercises federal question jurisdiction.

Now before the Court is Defendant Twin Township's Motion for Partial Judgment on the Pleadings ("MJOP") pursuant to Fed. R. Civ. P. 12(c). Doc. #3. The Township seeks judgment on the pleadings on the Sheltons' federal claims only, specifically, the Second Claim for Relief

which asserts violations of the Sheltons' procedural and substantive due process rights under 42 U.S.C. § 1983.  The Township also requests that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.  This MJOP is now fully briefed and ripe for decision.  A relevant factual background will first be set forth, followed by the legal standard for MJOP's and an analysis of Township's current MJOP.

I.   RELEVANT FACTUAL BACKGROUND

In the context of a MJOP, the Court must accept as true all of the factual allegations contained in the complaint.  The Sheltons' complaint includes the following factual allegations, most of which are not in dispute.

The Sheltons are residents of Preble County, Ohio and owners of certain real property located at 4557 Lexington Road, West Alexandria, Ohio ("Property"). Compl. ¶¶ 1, 7.  The Township is a non-charter township duly organized and existing under the laws of the State of Ohio. Compl. ¶ 2.  Jones and Creech are individual residents of Ohio and trustees for Twin Township. Compl. ¶¶ 3-4.

On or about August 11, 2010, a building inspector with Miami County Buildings Regulations issued a letter to the Sheltons, which stated that Jones requested an inspection of the structural condition of a barn located on the Property and that in the inspector's opinion, "the barn is unsafe to remain standing on the property; the original integrity has been lost over the years and it is close to falling down." Compl. ¶¶ 8-9; Ex. A.

On or about January 11, 2011, the Township passed Resolution No. 01112011-1 ("Resolution"), which stated that the barn was "insecure, unsafe, and/or structurally defective." Compl. ¶¶ 10, 11; Ex. B.  The Resolution ordered the barn to be demolished and removed and ordered that notice be given to the owners of the Property pursuant to R.C. § 505.86(B)

("Notice"). *Id.* The Township issued and the Sheltons received such notice also on or about January 11, 2011. Compl. ¶ 12; Ex. C.

The Notice provided that: "the buildings and/or structures located on said real property have been declared insecure, unsafe and/or structurally defective by the Miami County Building Inspector." Compl. ¶ 13; Ex. C.  Further, the Notice stated that the Township intended to demolish the structure in 30 days, unless prior to such time, the Sheltons were to "1. [e]nter into an agreement with the Board of Trustees to perform the required action; or 2. [r]equest a hearing before the Board of Township Trustees." *Id.*

On March 8, 2011, the Township discussed the issues set forth in the Notice with the Sheltons and their representatives at a Township Board of Trustees meeting. Compl. ¶ 14. Specifically, the parties agreed that the barn consisted of two separate and distinct parts, one of which was "dilapidated" and the other was "salvageable." *Id.*

 At this meeting, the parties reached a verbal agreement which was memorialized in a letter from the Preble County Prosecutor to the Sheltons' counsel dated March 9, 2011 ("Agreement"). Compl. ¶ 14; Ex. D.  According to the letter, the term of the agreement was 90 days, within which the Sheltons would: (1) "remove the dilapidated portion of the barn, including all materials and contents of said portion;" (2) "'patch up' any void left by the destruction of the dilapidated portion of the barn" and 'box in' any other voids  in the sheathing of the remaining structure;" and (3) "permit a building inspection to enter the structure in question," prior to which the Township would "contact Mr. Shelton and receive his specific permission before the inspection." Compl. ¶ 17; Ex. D.

During the 90 day period, the Sheltons removed part of the dilapidated portion of the barn, but did not remove the entire dilapidated portion "as a result of inclement weather."

3

Compl. ¶ 4.  At the expiration of the 90 day period, the Township, through a demolition crew, entered onto the Property and demolished both the dilapidated and salvageable portion of the barn. Compl. ¶ 19.  The Township did not provide additional notice to the Sheltons prior to entering the Property and demolishing the barn. Compl. ¶ 19.

As a result of the demolition, the Complaint asserts that the Township: (1) destroyed the entire barn, which included valuable personal property consisting of farm equipment, foundation seed, and biologically preserved bull semen and embryos housed in nitrogen freezing tanks; (2) damaged another separate barn on the property rendering it unusable; and (3) removed valuable structural steel and demolition debris from the Property despite the Sheltons' request not to do so. Compl. ¶¶ 28-31.

## II.  LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A motion for judgment on the pleadings is granted when there is no material issue of fact and the party making the motion is entitled to judgment as a matter of law. *Id*.

The pleading requirements necessary to survive a motion for judgment on the pleadings require more than labels and conclusions and a formulaic recitation of the elements of a cause of action. *Id*. at 550 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id*.

**III. ANALYSIS**

The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The scope of this MJOP includes only the federal due process claims asserted by the Sheltons against the Township. In its MJOP, the Township sets forth a number of arguments in support, which require the determination of two issues: (1) whether Township violated the Sheltons' procedural due process rights by ordering demolition without providing proper notice and opportunity to be heard, and (2) whether Township violated the Sheltons' substantive due process rights by wrongfully destroying the barns and the personal property located therein. Because the Court concludes in the negative to each of the foregoing issues, the Township's MJOP shall be granted. Moreover, the Court declines to exercise supplemental jurisdiction on the remaining state law claims.

  *A. Procedural Due Process Claim*

The Sheltons argue that the Township violated their procedural due process rights by ordering demolition of the barns without providing proper notice and opportunity to be heard. For a procedural due process claim under 42 U.S.C. § 1983, the Sheltons must establish each of the following three elements: (1) that they have a constitutionally protected life, liberty, or property interest; (2) that they were deprived of this interest within the meaning of the due process clause; and (3) that the state did not afford them adequate procedural rights prior to depriving them of that protected interest. *See, e.g.*, *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). For purposes of this Motion, the Court need only consider the final element. That is, assuming the Sheltons have been deprived of a protected interest; the Court will analyze whether the Township afforded the Sheltons adequate procedural due process.

In looking at "what process is due," the state is generally required to give notice and an opportunity to be heard prior to depriving a protected interest. *See, e.g.*, *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."); *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 544 (6th Cir. 2004) (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).  The sufficiency of the notice depends on whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Cash*, 388 F.3d at 544 (citing *Mullane v. Cen. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1953)).  The process that is due "is flexible and calls for procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  In its analysis, the Court is only to determine whether the minimal procedural protections afforded by the Constitution have been met; not whether the state used the most ideal procedural requirements. *See City of West Covina v. Perkins*, 525 U.S. 234 (1999).

Finally, a procedural due process claim may be pursued under two avenues.  In this regard, the plaintiff must establish either: "(1) that it was deprived of a liberty or property interest as a result of an 'established state procedure,' which itself violates procedural due process rights; or (2) that the Township deprived it of a liberty or property interest 'pursuant to a random and unauthorized act' and available state remedies would not adequately compensate it for the loss that it suffered." *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 349-350 (6th Cir. 2010) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1365 (6th Cir. 1993)); *see also Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

The Sheltons assert that their claim falls under the first category, arguing that they were *not* required to plead and prove the inadequacy of state remedies in order to maintain their procedural due process claim because the deprivation by the Township occurred pursuant to an established state procedure. *See Parratt v. Taylor*, 451 U.S. 527, 538 (1981) ("postdeprivation remedies made available by the State can satisfy the Due Process Clause. In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy."). For purposes of this Motion, the Court need not decide whether the deprivation occurred as a result of an established state procedure because, even assuming the Court accepts the Sheltons' argument, the Court nevertheless finds that the Sheltons received all the process that was due.

Turning to the applicable statue, Section 505.86 of the Ohio Revised Code provides that:

At least thirty days prior to the removal, repair, or securance of any insecure, unsafe, or structurally defective building, the board of township trustees shall give notice by certified mail of its intention with respect to the removal, repair, or securance to the holders of legal or equitable liens of record upon the real property on which the building is located and to owners of record of the property.

Moreover, the statute explains that "[t]he owners of record of the property or the holders of liens of record upon the property may enter into an agreement with the board to perform the removal, repair, or securance of the insecure, unsafe, or structurally defective building."

The Sheltons do not dispute that the Township provided them with the legal notice required by the statute. The Notice informed the Sheltons that the barn had been declared insecure, unsafe, and/or structurally defective and would be demolished after 30 days. The Notice went on to allow the Sheltons to enter into an agreement to abate the violation and/or request a hearing on the issue. The Sheltons argue the statute does not protect their procedural due process rights because "it does not require a hearing or allow a property owner to contest the

determination that a building is insecure, unsafe, or structurally deficient." However, the statute allows and the Sheltons exercised their rights under the statute to contest the determination. The Sheltons attended the meeting and were given the opportunity to be heard. With the help of legal counsel, the Sheltons opted to enter into an agreement with the Township which afforded them the opportunity to abate the unsafe nature of the barn themselves, essentially postponing the Township's abatement.

The Township was required to give the Sheltons notice and an opportunity for a hearing. The Sheltons were provided such notice and an opportunity to be heard. The Sheltons were aware that the barn was subject to demolition as the notice expressly stated so. The Sheltons sought legal counsel to attend the meeting and enter into an agreement with the Township. Instead of going forward with the demolition, the Agreement allowed the Sheltons 90 days to voluntarily abate the "dilapidated" portion of the barn and then be re-inspected. Thereafter, the Township memorialized the Agreement to the Sheltons' attorney and provided the opportunity to respond if such agreement did not conform to their intentions, which the Sheltons did not do. The Sheltons did not perform their obligations under the agreement within the 90 day term, nor is there indication that the Sheltons sought to notify or explain of their inability to perform within the period. When the Agreement expired, the Township exercised its authority to abate the unsafe building because the Sheltons did not do so.

If the Sheltons' are claiming that the Township breached the Agreement, that claim is a matter of contract interpretation properly pled in a breach of contract action. Similarly, if the Sheltons seek to challenge the constitutional validity of Section 505.86 itself, this must also

8

properly be pled.¹ However, it cannot be said that the Sheltons were not provided adequate procedural protection when the Township proceeded with the abatement of the barn.

### B. *Substantive Due Process Claim*

The Sheltons also argue that the Township violated their substantive due process rights by wrongfully destroying the barn and the valuable personal property located therein and by removing the structural steel after demolition. Claims for violation of substantive due process violations generally fall into two categories:

> The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment simpliciter.'
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court.

*LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Mertik v. Blalock*, 983 F.2d 1353 (6th Cir. 1993)). Therefore, either the asserted right must be fundamental or the conduct must "shock the conscious." *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012) (citing *Valot v. S.E. Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (discussing substantive due-process claims as falling "into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'")).

The Sixth Circuit recognizes that "[t]hese limitations are meant to provide 'heightened protection against government interference with certain fundamental rights and liberty interests.'" *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Seal v. Morgan*, 229 F.3d

---

¹ At least one Ohio court has found Ohio Rev. Code §505.86 to be constitutional if applied in a constitutional manner. *Chalker v. Howland Township Board of Trustees*, 658 N.E.2d 335, 340 (Trumbull County, Ohio C. P. 1995).

567, 574 (6th Cir. 2000)). This rests on the notion that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Id.* (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (citation omitted)). "However, identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle . . . as the list of fundamental rights is short." *Id.* (internal citations omitted). Therefore, for a claimed right to be fundamental, it must be "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed . . . . *Id.* (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

> Moreover, the Sixth Circuit has explained:
>
> The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental. It protects those interests, some yet to be enumerated, implicit in the concept of ordered liberty, like personal choice in matters of marriage and the family.

*LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Sutton v. Cleveland Board of Education*, 958 F.2d 1339 (6th Cir. 1992)).

The Sheltons argue that they are not required to prove the Township's conduct 'shocks the conscious,' but instead assert that their property interest is a fundamental, enumerated right. However, the asserted origin of their property interest is unclear. On one hand, the Sheltons assert that the Agreement "created separate and distinct protectable property interests," hinting that the protected interest stems from the contract entered into with the Township. On the other hand, the Sheltons maintain that property interests, including the rights of "possession and use,"

10

are fundamental rights protected by the Fourteenth Amendment so that the protected interest is the real and personal property itself. In either case, the Sheltons' claim must fail.

Analyzing under the first scenario, the Sixth Circuit has explained that a state-created contractual right is not "a proper subject of federal protection under the doctrine of substantive due process." *See Bowers*, 325 F.3d at 764 (holding that the state-created contractual right to a discount on one's water bills is adequately redressed in a state breach of contract action and therefore is not subject to substantive due process protections); *see also Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("most, if not all state-created contract rights . . . are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract."); *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 834 (6th Cir. 2009) ("Even assuming that Plaintiff alleged a protected property interest based upon its purchase agreement with the City, this state-created contractual right is not a proper subject of federal protection under the doctrine of substantive due process."). As a result, if the Sheltons are alleging the Township breached the Agreement, the Court finds that these contractual disputes and interpretations are precisely the types of issues *not* properly subject to or resolved through the substantive due process clause.

Analyzing under the second scenario, the Sixth Circuit has similarly explained that "[t]here exists no 'fundamental' right in our legal system to violate a municipality's codes and regulations with impunity, and the conduct of . . . officials in enforcing those codes and regulations was neither 'arbitrary' nor 'conscience-shocking' in the constitutional sense." *Banks v. City of Whitehall*, 344 F.3d 550, 554-555 (6th Cir. 2003) (citing *Bowers*, 325 F.3d at 758 (majority and concurring opinions)). When the barn was declared unsafe, pursuant to the R.C. § 505.86, the Township cannot be said to have violated the Sheltons' substantive due process

**11**

rights by enforcing the rights allotted to it in the Ohio statute.  Even assuming there is a protected interest, it cannot be said that the Township's conduct arose to the level of 'shocking the conscious.'  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" the government's actions must 'shock the conscience' in order to violate substantive due process.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)); *see also Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (reiterating that conduct that "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1478 (6th Cir. 1993) ("shocks the conscience" standard only applies to physical abuse).  Based upon the foregoing reasoning, the Sheltons have failed to state a claim for violation of their substantive due process rights.

### C.  *Supplemental Jurisdiction over Remaining Claims*

Upon determining that the procedural and substantive due process claims should be dismissed, the Court must determine whether to exercise supplemental jurisdiction over the remaining claims, all of which are claims arising under state law.  28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  *See Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) ("A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."); *see also Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citation omitted) ("[S]upplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed. Following such a dismissal, the district court in its

discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims; however, such a decision is 'purely discretionary.'"). Notwithstanding the discretionary authority, the Sixth Circuit has explained that when "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson*, 89 F.3d at 1254-55; *see also Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011).

Applying those principals, the Court declines to exercise jurisdiction over the Sheltons' remaining state law claims. The parties devoted little discussion in their briefs to the state law claims and the dismissal will occur at an early stage of litigation, therefore, the balancing of considerations weighs in favor of declining to exercise jurisdiction.

## IV. CONCLUSION

Based on the foregoing, Twin Township's Motion for Partial Judgment on the Pleadings (Doc. #3) is **GRANTED**. The federal claims are hereby **DISMISSED**. The remaining claims are **DISMISSED WITHOUT PREJUDICE** to be refiled in a state court of competent jurisdiction.

**DONE** and **ORDERED** in Dayton, Ohio, April, 16, 2013.[2]

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Jenna S. Harrison in drafting this opinion.